UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
KIMBERLY MOFFATT JONES,

                    Plaintiff,

          - against -

PONANT USA LLC,

                    Defendant.
------------------------------------X

**MEMORANDUM AND ORDER**

19 Civ. 3041 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**


     Ponant USA LLC ("Ponant") moves to dismiss the first amended complaint of Kimberly Moffatt Jones.  The Court grants Ponant's motion for the reasons stated herein.

<b>BACKGROUND</b>

     Compagnie du Ponant SAS ("CDP") is a French cruise ship operator that owns the luxury cruise ship Le Soléal.  Ponant is a subsidiary of CDP and a Delaware limited liability company headquartered in New York City.

     On August 24, 2018, Jones made a reservation with Ponant for a cruise on Le Soléal.  Christopher B. Kende ("Kende Decl."), Ex. C at 2.  The reservation, which Jones made through Kevin Swingle, a travel agent affiliated with American Express, was for Jones and her daughter to sail round-trip from Ushuaia, Argentina to Antarctica from December 20, 2018 through January 5, 2019.  Kende Decl., Ex. C at 2.  After Swingle made the reservation for Jones,

Ponant sent him a brief email that attached an "option" for Jones to purchase two tickets for the reserved cabin at the reserved price.  Kende Decl., Ex. C at 2.  The option, which "guarantee[d] [the] availability of the cabin and the price until 29 August 2018," provided that Jones could buy the tickets by submitting a $12,862.50 deposit on or before August 29 and paying the balance of the $51,450 cost later.  See Kende Decl., Ex. C at 2, 5.

Ponant's email stated "[t]hanks for reading our **General Sales Terms & Conditions**," the emphasized part of which was a teal-colored hyperlink to the General Terms and Conditions of Sale (the "General Terms and Conditions") that were in effect during the events alleged in the amended complaint.  Kende Decl., Ex. C at 2 (emphasis in original).  The attached option, meanwhile, provided that "[p]ayment of deposit by customer means acceptance of the full General [I]nformation & Terms and Conditions.  When the cruise is purchased via a travel agency or any other intermediate, the travel agency or intermediate is deemed to have the acceptance from his client of the full General [I]nformation & Terms and Conditions when he confirms the booking to Ponant."  Kende Decl., Ex. C at 6.  The option also stated that "***[i]n certain situations (see article 11.4 of the General Terms & Conditions) PONANT has the right to change the route or ports of call or destination, [or] to delay the journey or to terminate it . . ., even if this results in an increase or a shortening of the duration of the***

*program.*"   Kende Decl., Ex. C at 10 (emphasis in original).

The General Terms and Conditions provided that "[t]his Contract is governed by French law," Kende Decl., Ex. A § 16.1, and included a forum-selection clause stating that "[o]nly the courts in the area of the Marseille District Court, France, have jurisdiction to hear any proceedings initiated against CDP, its employees, subsidiaries, or sub-contractors, even in the event that third parties are involved," Kende Decl., Ex. A § 16.2 (the "Forum-Selection Clause").

Jones paid the $12,862.50 initial deposit on the same day that Ponant emailed Swingle, Kende Decl., Ex. D at 2, and the balance of the $51,450 cost on September 12, 2018, Kende Decl., Ex. C at 4.  She thereafter reserved and purchased tickets for her two sons, one of whom is autistic, to join her and her daughter on the cruise.  Kende Decl., Exs. F, G, N.  Whereas Jones reserved and purchased the tickets for her and her daughter through Swingle, she reserved and purchased the tickets for her sons through Heather Loss, a travel agent with Largay Travel.  See First Am. Compl. ("FAC") ¶ 11; see also, e.g., Kende Decl., Exs. G, H, I.

The first amended complaint alleges that Jones chartered a private jet to fly her, her three children, and her autistic son's therapist round-trip from California to the cruise's port of embarkation in Ushuaia, Argentina because her autistic son is unable to fly commercially.  FAC ¶ 12.  Jones allegedly informed

3

Ponant that she had chartered the private flight and why she had done so.  FAC ¶ 13.

On November 16, 2018, Ponant issued a notice that Le Soléal had "suffered a technical incident as she was sailing through [Chile], and one of her propellers was damaged." Kende Decl., Ex. K.  The notice described the damage as "not serious," and stated that Le Soléal "will be taken out of service temporarily to assess the damage and carry out any necessary repairs.  To date, the cruise line plans to cancel one cruise: the one that was due to depart Ushuaia on 20 November 2018." Kende Decl., Ex. K.

Around the same time, "Ponant represented to Ms. Jones, by way of Ms. Loss, that the [c]ruise was to embark from Concepcion, Chile, not from Ushuaia, Argentina," FAC ¶ 15, and "that the reason for the [r]erouted [c]ruise was that the Le Soleal [sic] had been in a minor accident (the 'Minor Accident Misrepresentation')," FAC ¶ 16.  Ponant also allegedly explained "that the accident did not lead to major damage, the repairs that needed to be made were not serious, that all of the repairs had already been made, and ensured . . . Jones' embarkment [sic] on the [c]ruise within a reasonable time frame under the circumstances (the 'Minor Repairs Misrepresentations[,]' [and, together with the Minor Accident Misrepresentation,] the 'Ponant Misrepresentations')."  FAC ¶ 17. Jones changed her flight's itinerary accordingly.  See FAC ¶ 18.

Ponant also requested that Jones execute sworn statements on

behalf of herself and each of her children attesting that the signatory had "read, understood and . . . accept[ed] all the general and particular terms and conditions of sale as well as the specific information published in the PONANT brochure corresponding to my cruise."  Kende Decl., Ex. F.  Jones executed the sworn statements on November 28, 2018, nearly one month before the cruise's scheduled embarkation.  Kende Decl., Ex. F.

The first amended complaint alleges that after Jones and her family arrived in Concepcion, Chile, Le Soléal's captain told Jones that the cruise's departure was delayed until the next day.  FAC ¶¶ 18-19.  That evening, however, the captain allegedly "admitted" to Jones that the "real reason" for the delay was a "major problem of the propeller of the Le Soleal [sic] being broken" in the November incident.  FAC ¶ 20.  The captain allegedly told Jones that Le Soléal would nonetheless "generally be ready to embark" the next day after a sea trial in the morning.  FAC ¶ 24.

The first amended complaint alleges that, on the next morning, the captain informed Jones that there would be no sea trial because the damaged propeller was still under repair.  FAC ¶ 25.  This caused Jones to call the company through which she had chartered her private flight, which said that it could pick up Jones and her family in Concepcion that day, or that it could return to get them in Ushuaia, Argentina on January 5.  FAC ¶ 26.  Jones decided to leave with her family that day.  FAC ¶ 29.  Le Soléal sailed for

Antarctica in the evening, and Ponant later refunded Jones the full $125,028 cost of her cruise tickets. See ECF No. 22.

On April 5, 2019, Jones filed a complaint against Ponant, which she amended in August 2019 in response to Ponant filing a pre-motion letter stating the bases on which it sought leave to move to dismiss the complaint. The first amended complaint asserts claims for intentional and negligent misrepresentation on the theory that Ponant made the alleged Ponant Misrepresentations in an effort to defraud Jones, and that her reliance on the alleged Ponant Misrepresentations led her to suffer losses in the form of paying $355,000 for private airfare. FAC ¶¶ 39-55. One of the grounds on which Ponant sought leave to move to dismiss was that the Forum-Selection Clause requires Jones to sue Ponant in France. The Court requested initial briefing limited to that issue.

### DISCUSSION

Ponant moves to dismiss this action on the ground that the Forum-Selection Clause renders venue "improper" in the Southern District of New York. Fed. R. Civ. P. 12(b)(3). A forum-selection clause cannot render venue "improper" under Rule 12(b)(3), however, because "[w]hether venue is . . . 'improper' depends exclusively on whether the court . . . satisfies the requirement of federal venue laws, and those provisions say nothing about a forum-selection clause." Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tx., 571 U.S. 49, 55 (2013). Instead,

6

"'[t]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of forum non conveniens,' rather than Rule 12(b)." Martinez v. Bloomberg LP, 740 F.3d 211, 216 (2d Cir. 2014) (quoting Atl. Marine Const. Co., 571 U.S. at 61). The Court therefore treats Ponant's motion to enforce the Forum-Selection Clause as a motion to dismiss for forum non conveniens. See, e.g., Fubon Ins. Co. Ltd. v. OHL Int'l, No. 12 Civ. 5035 (RJS), 2014 WL 1383604, at *5 (S.D.N.Y. Mar. 31, 2014) (converting motion to enforce forum-selection clause under Rule 12(b)(3) into motion to dismiss for forum non conveniens).[1]

Under the doctrine of forum non conveniens, "'a valid forum-selection clause should be given 'controlling weight in all but the most exceptional cases.'" Atl. Marine Const. Co., 571 U.S. at 63 (internal alterations omitted) (quoting Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 33 (1988)). The Court "must consider, first, whether the clause is valid and, second, whether public interest factors nevertheless counsel against its enforcement." Midamines SPRL Ltd. v. KBC Bank NV, No. 12 Civ. 8089 (RJS), 2014 WL 1116875, at *3 (S.D.N.Y. Mar. 18, 2014) (citing Atl. Marine

---

[1] While Atlantic Marine clarified that forum non conveniens is the proper procedural mechanism for enforcing nonfederal forum-selection clauses, it did not alter the legal principles governing the enforcement of such clauses, on which principles both parties relied in their submissions. Accordingly, the Court deems this motion ripe for resolution notwithstanding Ponant's misidentification of Rule 12(b)(3) as the proper procedural mechanism for enforcing the Forum-Selection Clause.

Const. Co., 571 U.S. at 62-63).

Courts in the Second Circuit assess the validity of a forum-selection clause pursuant to the four-part test set forth in Phillips v. Audio Active Ltd., 494 F.3d 378, 383-84 (2d Cir. 2007). The Court "ask[s]: (1) 'whether the clause was reasonably communicated to the party resisting enforcement'; (2) whether the clause is 'mandatory or permissive, i.e., . . . whether the parties are required to bring any dispute to the designated forum or simply permitted to do so'; and (3) 'whether the claims and parties involved in the suit are subject to the forum selection clause.'" Martinez, 740 F.3d at 217 (emphasis deleted) (quoting Phillips, 494 F.3d at 383). "'If the forum-selection clause was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute, it is presumptively enforceable.'" Id. (quoting Phillips, 494 F.3d at 383). "A party can overcome this presumption only by (4) 'making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" Id. (quoting Phillips, 494 F.3d at 383 (quoting M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972))).

If a forum-selection clause is valid, then the only remaining inquiry is whether certain public interest considerations outweigh its enforcement. See Atl. Marine Const. Co., 571 U.S. at 62-64 & n.6. However, in light of the "controlling weight" afforded to

8

valid forum-selection clauses, public interest considerations "will rarely defeat" a motion to dismiss for <u>forum non conveniens</u> and a valid forum-selection clause "should control except in unusual circumstances." <u>Id.</u> at 64.

For the reasons stated below, the Court finds that the Forum-Selection Clause is valid and that public interest considerations do not outweigh its enforcement.

**I. Validity of the Forum-Selection Clause**[2]

1. Reasonable Communication

The first step of the four-part test for whether the Forum-Selection Clause is valid is to determine whether Ponant "'reasonably communicated'" it to Jones. <u>Martinez</u>, 740 F.3d at 217 (emphasis deleted) (quoting <u>Phillips</u>, 494 F.3d at 383).

As an initial matter, it is black-letter law that a travel agent is deemed to be the agent of the passenger on whose behalf he acts, and the passenger is accordingly charged with constructive

---

[2] Although Jones requests an evidentiary hearing, "to trigger an evidentiary hearing, a party must submit evidence creating a genuine issue of disputed fact that requires resolution by the Court." <u>Zaltz v. JDATE</u>, 952 F.Supp. 2d 439, 448 n.5 (E.D.N.Y. 2013) (declining to hold evidentiary hearing where the defendant had submitted "thorough" evidence in support of enforcement but the plaintiff had submitted "no[ne]"). While Ponant submitted a declaration with its motion, its declaration merely supplied the Court with documents integral to the complaint, for example Ponant's email to Swingle, the sworn statements that Jones executed on behalf of herself and her children, and the General Terms and Conditions. Jones, meanwhile, submitted no evidence, by affidavit or otherwise. The Court accordingly concludes that an evidentiary hearing is unwarranted in the circumstances of this case. <u>Donnay USA Ltd. v. Donnay Int'l S.A.</u>, 705 Fed. App'x 21, 26 n.4 (2d Cir. 2017) ("Where, as here, a plaintiff adduces no evidence that places any material fact in dispute, it is within a district court's discretion to rely on pleadings and affidavits in resolving a motion to dismiss based on a forum selection clause.").

9

knowledge of information in the travel agent's possession.  Lurie v. Norwegian Cruise Lines, Ltd., 305 F.Supp. 2d 352, 360 n.1 (S.D.N.Y. 2004).  Courts therefore routinely deem forum-selection clauses reasonably communicated to plaintiffs where the carrier reasonably communicated its existence to the plaintiff's travel agent.  See, e.g., id. at 360 (finding reasonable communication where the defendant cruise ship operator had "mailed [the terms and conditions of passage] to the [plaintiffs'] travel agent"); Santos v. Costa Cruise Lines, Inc., 91 F.Supp. 3d 372, 378 (E.D.N.Y. 2015) (deeming plaintiffs' failure to receive terms of passage "irrelevant" to whether the defendant cruise ship operator reasonably communicated those terms to them because "[their] travel agent [had] received" the terms); Gomez v. Royal Caribbean Cruise Lines, 964 F.Supp. 47, 51 (D.P.R. 1997) (concluding defendant reasonably communicated the forum-selection clause to the plaintiffs where their "travel agent, Andrea Travel, . . . was informed of" it).  Were the law otherwise, passengers could skirt the application of forum-selection clauses and other contractual conditions of carriage by using travel agents to transact with carriers.

Ponant's communications with Jones and her travel agents demonstrate that Ponant reasonably communicated the Forum-

Selection Clause to her.[3]  Ponant's August 24 email to Swingle, which attached the option for Jones to purchase tickets for the cruise, stated "[t]hanks for reading our **General Sales Terms & Conditions**," the emphasized portion of which was a teal-colored hyperlink to the General Terms and Conditions.  Kende Decl., Ex. C at 2 (emphasis in original).  That conspicuous, teal-colored hyperlink not only heralded important legal constraints between Ponant and Jones should Jones have chosen to purchase the tickets, but also made those constraints readily available for review.  Cf. Starkey v. G Adventures, Inc., 796 F.3d 193, 197 (2d Cir. 2015) (concluding that "a hyperlink and language advising [the plaintiff] to click on the hyperlink" may "be used to reasonably communicate a forum selection clause.").  Furthermore, in the attached option, under its listing of the routing and account numbers to which payment must be submitted in order to purchase

---

[3] Jones asks the Court to evaluate whether Ponant reasonably communicated the Forum-Selection Clause to her based on the two-part test adopted in Ward v. Cross Sound Ferry for whether a sea carrier has reasonably communicated restrictions in a passenger ticket contract, which is a contract that "appear[s] on a passenger ticket." 273 F.3d 520, 522-23 (2d Cir. 2011) (applying the test to a time limitation printed "on the reverse side of" a ferry ticket).  Under that test, the Court considers "(1) whether the physical characteristics of the ticket itself reasonably communicated to the passenger the existence therein of important terms and conditions that affected the passenger's legal rights, and (2) whether the circumstances surrounding the passenger's purchase and subsequent retention of the ticket/contract permitted the passenger to become meaningfully informed of the contractual terms at stake." Id.  Ponant did not use a passenger ticket contract to communicate the terms of Jones' cruise to her, however.  It would therefore make little sense to determine whether Ponant reasonably communicated those terms based on the "physical characteristics of the ticket" and "the circumstances surrounding . . . retention of" the tickets Ponant sent her on December 12.  Id.  Nevertheless, to the extent the two considerations from Ward apply analogously to Ponant's communications with Jones, the Court considers them in its analysis.

the tickets, there was a notice that "[p]ayment of deposit by customer means acceptance of the full . . . Terms and Conditions. <u>When the cruise is purchased via a travel agency . . . the travel agency . . . is deemed to have acceptance from his client of the full . . . Terms and Conditions</u>." Kende Decl., Ex. C at 6 (emphasis added). The option further highlighted the significance of the General Terms and Conditions with the boldface warning that under "***article 11.4 of the General Terms & Conditions***" Ponant could alter the voyage, including "***to delay the journey or to terminate it.***" <u>Id.</u>, Ex. C at 10 (emphasis in original).

Jones, moreover, had ample opportunity to review the General Terms and Conditions before purchasing the tickets and embarking on the cruise. See <u>Ward</u>, 273 F.3d at 525. Ponant afforded Jones five days to review the General Terms and Conditions before requiring her to submit the initial deposit to purchase them. <u>Cf. Ames v. Celebrity Cruises, Inc.</u>, No. 97 Civ. 65 (LAP), 1998 WL 427694, at *5 (S.D.N.Y. July 29, 1998) (finding reasonable communication where the plaintiffs possessed the terms of passage for "two or three days" before their trip). Three-and-a-half months then elapsed between Jones paying the balance of the purchase price and the cruise's scheduled departure, which period far surpasses what courts have deemed sufficient to afford a meaningful opportunity for passengers to familiarize themselves with the terms of passage. See, e.g., <u>Santos</u>, 91 F.Supp. 3d at

378 (finding reasonable communication where the defendant had emailed the terms to the plaintiffs' travel agent one month prior to embarkation); Lurie, 305 F.Supp. 3d at 360-61 (same where the defendant had mailed the contractual terms to the plaintiffs' travel agent one month before departure).

In fact, during that period, Ponant requested that Jones execute sworn statements on behalf of herself and each of her children attesting that she "ha[d] read, understood and accept[ed]" the terms governing her tickets, including General Terms and Conditions," which Jones executed on November 28, 2018, almost an entire month before the cruise's scheduled departure. Kende Decl., Ex. F.

In these circumstances, where Ponant underwent significant efforts to communicate the terms of Jones' passage to her, the Court finds that Ponant reasonably communicated the Forum-Selection Clause to Jones.

2. Mandatory or Permissive Forum-Selection Clause[4]

The second step of the four-part test "requires [the Court]

---

[4] "In answering the interpretive questions posed by parts two and three of the four-part framework [for determining whether a forum-selection clause is valid] . . . [the Court] normally appl[ies] the body of law selected in an otherwise valid choice-of-law clause." Martinez, 740 F.3d at 217-18. Normally, then, the Court would apply French law at the second and third steps of the analysis because the General Terms and Conditions contain a French choice-of-law clause. However, where, as here, neither party has "urged the application of any specific element of the contractually chosen body of law to govern the interpretation of the forum selection clause," the Court "'appl[ies] general contract law principles and federal precedent to discern the meaning and scope of the forum clause.'" Id. at 223 (quoting Phillips, 494 F.3d at 386).

to classify the clause as mandatory or permissive, i.e., to decide whether the parties are required to bring any dispute to the designated forum or simply permitted to do so." Phillips, 494 F.3d at 383 (emphasis deleted). The inquiry "is one of contract interpretation." Id. at 386. Thus, a forum-selection clause is mandatory if it uses "specific language of exclusion" to "confer[] exclusive jurisdiction on the designated forum." Global Seafood Inc. v. Bantry Bay Mussels Ltd., 659 F.3d 221, 225 (2d Cir. 2011) (internal quotation marks omitted).

The Forum-Selection Clause states that "[o]nly the courts in the area of the Marseille District Court, France, have jurisdiction to hear any proceedings initiated against CDP [or its] subsidiaries." Kende Decl., Ex. A § 16.2 (emphasis added). The word "only" is specific language of exclusion that grants exclusive jurisdiction to the courts in the area of the Marseille District Court in France. See Macsteel Int'l USA Corp. v. M/V Larch Arrow, her engines, boiler, etc., 354 Fed. App'x 537, 539 (2d Cir. 2009) (explaining that the word "only" is "specific language of exclusion" sufficient to confer exclusive jurisdiction). The Forum-Selection Clause is therefore mandatory, notwithstanding that it does not vest jurisdiction in a particular court in Marseille. See, e.g., Phillips, 494 F.3d at 386 (enforcing a forum-selection clause "lack[ed] the specificity of a particular court or city" but nonetheless "reference[d] . . . a particular

location," namely, "England").

### 3. Claims and Parties Subject to the Forum-Selection Clause

The third step of the four-part test asks whether the parties and the claims "are subject to the forum selection clause." Phillips, 494 F.3d at 383. Neither party disputes that Jones is subject to the Forum-Selection Clause, which also applies to Ponant as it is a subsidiary of CDP. See Kende Decl., Ex. A § 16.2 (applying to "proceedings . . . against CDP [or its] subsidiaries").

Jones' intentional and negligent misrepresentation claims are also subject to the Forum-Selection Clause. "The scope of a forum selection clause is not limited solely to claims for breach of the contract that contains it." Cfirstclass Corp. v. Silverjet PLC, 560 F.Supp.2d 324, 329 (S.D.N.Y. 2008) (citing Roby v. Corp. of Lloyd's, 996 F.2d 1353, 1361 (2d Cir. 1993)). Instead, "[w]hether a forum selection clause encompasses other claims depends principally on how broadly the clauses are worded." Id. (citing Roby, 996 F.2d at 1361).

The Forum-Selection Clause could hardly be worded more expansively. Its vast scope, which reaches "any proceedings against CDP [or its] subsidiaries," is not limited to proceedings based on specific types of claims and therefore plainly encompasses this action. See, e.g., Korean Press Agency, Inc. v. Yonhap News Agency, 421 F.Supp. 2d 775, 781 (S.D.N.Y. 2006) (concluding that

a forum-selection clause governing "any disputes aris[ing] between 'A' and 'B'" included plaintiff's tort claims). Indeed, the Forum-Selection Clause is considerably broader than other forum-selection clauses that courts have found encompassed tort claims such as the claims Jones asserts against Ponant. See, e.g., BMW of N. Am. LLC v. M/V Courage, 254 F.Supp. 3d 591, 597-98 (S.D.N.Y. 2017) (concluding that forum-selection clause governing "'[a]ny dispute arising under this [Bill of Lading]'" included tort claims); Cfirstclass Corp., 560 F.Supp. 2d at 329-30 (finding the same for clause governing "all disputes arising hereunder"); Brennen v. Phyto-Riker Pharm., Ltd., No. 01 Civ. 11815 (DLC), 2002 WL 1349742, at *4-5 (S.D.N.Y. June 20, 2002) (holding the same for clause governing any action "arising out of or relating to this Agreement").

Jones nonetheless argues that her intentional and negligent misrepresentation claims are not subject to the Forum-Selection Clause because those claims are based on allegedly "fraudulent communications, not conditions of cruise line carriage," and do not depend on her contractual relationship with Ponant. See Opp. at 7. But "'a forum selection clause should not be defeated by artful pleading of claims not based on the contract containing the clause if those claims grow out of the contractual relationship, or if the gist of those claims is a breach of that relationship." Cfirstclass Corp., 560 F.Supp. 2d at 330 (citing Anselmo v.

16

Univision Station Grp., Inc., No. 92 Civ. 1471 (RLC), 1993 WL 17173, at *2 (S.D.N.Y. Jan. 15, 1993)).  Such is the case here as the alleged Ponant Misrepresentations not only related to Ponant's contractual right to reroute or delay the cruise, but also concerned Le Soléal's seaworthiness and thus Ponant's ability to perform under its contract with Jones.  See, e.g., Bluefire Wireless, Inc. v. Cloud9 Mobile Commc'ns., Ltd., No. 09 Civ. 7268 (HB), 2009 WL 4907060, at *3 (S.D.N.Y. Dec. 21, 2009) (finding that forum-selection clause included fraud claims because they "appear[ed] to be inextricably intertwined with . . . [defendant's] performance under [the contract]."); U.S. Fid. & Guar. Co. v. Petroleo Brasileiro S.A.-Petrobras, No. 98 Civ 3099 (JGK), 2001 WL 300735, at *20 (S.D.N.Y. Mar. 27, 2001) (concluding the same where the tort claims were "dependent on [and] derivative of the contractual relationship") (collecting cases).

The Court accordingly finds that the parties to and the claims asserted in this action are subject to the Forum-Selection Clause.

4. Presumption of Enforceability

At the fourth step of the four-part analysis, the Forum-Selection Clause is presumptively enforceable, and Jones bears the burden of rebutting that presumption.  Phillips, 494 F.3d at 383. Jones "bears a heavy burden" in that regard.  New Moon Shipping Co., Ltd. v. MAN B & W Diesel AG, 121 F.3d 24, 32 (2d Cir. 1997) (citing M/S Bremen, 407 U.S. at 18).  Specifically, she can rebut

17

the presumption of enforceability only by demonstrating that "'(1) [the Forum-Selection Clause's] incorporation was the result of fraud or overreaching; (2) the law to be applied in the selected forum is fundamentally unfair; (3) enforcement contravenes a strong public policy of the forum in which suit is brought; or (4) trial in the selected forum will be so difficult and inconvenient that the plaintiff effectively will be deprived of [her] day in court.'" Donnay USA Ltd. v. Donnay Int'l S.A., 705 Fed. App'x 21, 24 (2d Cir. 2017) (quoting Martinez, 740 F.3d at 228).

Jones does not contend that Ponant incorporated the Forum-Selection Clause into the cruise ticket contract through fraud or overreaching, or that it would be fundamentally unfair to litigate under French law.  Nor does she assert that enforcing the Forum-Selection Clause would controvert any public policy, or that trial in Marseille would effectively deprive her of her day in court.

She instead argues that the Court should not enforce the Forum-Selection Clause because it is "overbroad," "incomprehensible," and was not the product of an arm's length negotiation between sophisticated businesses.  But she cites no case in which a court declined to enforce a forum-selection clause for overbreadth.  Moreover, "unequal bargaining power and prolix language do not constitute the 'extraordinary circumstances' needed to invalidate a forum-selection clause." Todorovic v. Liquid Labs, Inc., No. 18 Civ. 1643 (JPO), 2018 WL 2209506, at *2

(S.D.N.Y. May 14 2018) (quoting <u>Atl. Marine Const. Co.</u>, 571 U.S. at 62).  Courts therefore regularly enforce unnegotiated forum-selection clauses where, as here, the litigation is between a corporate cruise ship operator and a passenger.  <u>See, e.g.</u>, <u>Shute</u>, 499 U.S. at 595; <u>Effron v. Sun Line Cruises, Inc.</u>, 67 F.3d 7, 11 (2d Cir. 1995); <u>Ames</u>, 1998 WL 427694, at *7.

Jones has thus failed to rebut the presumptive validity of the Forum-Selection Clause.

## II. Public Interest Considerations

Because the Forum-Selection Clause is valid, it must be enforced unless public interest considerations outweigh its enforcement.  <u>Atl. Marine Const. Co.</u>, 571 U.S at 62.  Public interest considerations "include 'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law.'"  <u>Id.</u> at 62 n.6 (internal alteration omitted) (quoting <u>Piper Aircraft Co. v. Reyno</u>, 454 U.S. 235, 241 n.6 (1981)).  Public interest considerations are distinct from private interest considerations, which "include 'relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that

make trial of a case easy, expeditious and inexpensive.'" Id.
(quoting Piper Aircraft Co., 454 U.S. at 241 n.6).  The Supreme
Court has instructed that courts "should not consider arguments
about the parties' private interests" when evaluating a motion to
dismiss for forum non conveniens, and that given the "controlling
weight" afforded to an otherwise valid forum-selection clause,
public interest considerations "will rarely defeat" a motion to
dismiss for forum non conveniens.  Id. at 64.  "[T]he practical
result is that forum-selection clauses should control except in
unusual circumstances."  Id.

Jones raises no public interest considerations militating
against enforcement of the Forum-Selection Clause.  She instead
protests that the alleged Ponant Misrepresentations were made in
the United States, the witnesses are located there, Ponant is a
U.S.-domiciled subsidiary of CDP, and Jones is a person rather
than a business.  These considerations merit no weight, however,
because they concern private, not public, interests.

**CONCLUSION**

Ponant's motion to dismiss is granted for the reasons stated herein, and the case is dismissed without prejudice to refiling abroad consistent with the Forum-Selection Clause.  The Clerk of Court is respectfully directed to terminate any motions pending in this case and to close it.

**SO ORDERED.**

Dated:    New York, New York
          May 14, 2020

_____
        NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

21